LYLE M. WOODS, Appellant, v. KERN COUNTY MUTUAL
BUILDING AND LOAN ASSOCIATION et al., Re-
spondents.

Frank Aspinwall for Appellant.

A. J. Coogan, James M. McGrath, Ewell D. Moore and Dudley J. Scholten, as *Amici Curiae,* on Behalf of Appellant.

Borton, Petrini & Conron for Respondents.

BARNARD, P. J.—In this action the plaintiff sought to recover a judgment canceling a trust deed, for the return of two stock certificates, and for the cancellation of a grant deed upon the grounds that these instruments had been obtained by the defendants without consideration and in violation of the Home Owners' Loan Act of 1933. (48 U. S. Stats. at Large, 128; Title 12, U. S. C. A., sec. 1461 et seq.) A demurrer to a second amended complaint was sustained without leave to amend and the plaintiff has appealed from the judgment thereafter entered.

Among other things, the complaint in question alleged that on February 25, 1931, the appellant executed and delivered to the respondents a note for $3,000 secured by a trust deed covering certain real property in Bakersfield; that on October 16, 1933, at the suggestion and upon the instigation of the respondents she applied to the Home Owners' Loan Corporation for a loan in order to pay and discharge the aforesaid indebtedness; that on May 16, 1934, the respondents, by written agreement, consented to accept the sum of $2,334 in Home Owners' Loan bonds with $25 in cash and thereupon

to release their claim; that thereafter the appellant executed and delivered to Home Owners' Loan Corporation a note and mortgage for $2,400; and that on or about January 16, 1934, the respondents falsely and fraudulently stated to her that in order to obtain the said Home Owners' loan it would be necessary for her to execute and deliver to them a note for $700 secured by a second trust deed on the same property, to assign and transfer to the respondents two described certificates of stock of the face value of $100 each, and to deliver to the respondents a grant deed for her one-third interest in certain other real property, in order to secure the balance of the original loan after deducting the face value of the Home Owners' Loan bonds, and that the said grant deed would be recorded upon her failure to make the monthly payments upon the $700 second trust deed.

It is then alleged that, being a woman of little business experience, the appellant relied upon the statements made to her by the respondents; that on June 19, 1934, she executed and delivered to the respondents a note for $700, secured by a trust deed; that on February 19, 1935, she transferred and assigned the two paid-up certificates of stock of the face value of $100 each; that some time during the year 1934, the exact date of which she does not recall, she executed and delivered to respondents the grant deed covering her equity in the other real property to which we have referred; that she executed and transferred these instruments in the belief that such acts were necessary in order to obtain the benefits of a Home Owners' loan; that the statements made to her by the respondents were false in that these things were not necessary for the obtaining of a loan under the Home Owners' Loan Act; that on January 1, 1937, she learned for the first time that the statements made to her by the respondents were false and that it was unnecessary for her to deliver to them anything of value for the purpose of obtaining a loan under the Home Owners' Loan Act; and that on April 30, 1937, she demanded of the respondents that they return to her the various documents and evidence of title thus transferred and delivered to them, which demand was refused.

It is further alleged that on July 1, 1934, in conformity with their agreement of May 16, 1934, the respondents received and receipted for Home Owners' Loan bonds in the sum of $2,334 and accepted the same in full discharge of their

claim; that upon the acceptance of said bonds the respondents had no further title or claim upon said real property; and that said trust deed for $700, said shares of stock, and said grant deed were obtained by fraud and deceit and without consideration. In Paragraph XII it is alleged that these things were "obtained with any knowledge or notice, either actual or implied to the Home Owners' Loan Corporation and is a violation of the Home Owners' Loan Act of 1933".

The agreement signed by the respondents on May 16, 1934, is attached as an exhibit to the complaint and contains the following: "The undersigned is a holder of a first mortgage or other obligation, which constitutes a lien or claim on the title to the home property of Lyle M. Woods, located at 1406–26th, Bakersfield California, in the sum of $3308.74 including unpaid balance of principal and interest, to date.

"Being informed that said owner has made application to Home Owners' Loan Corporation to refund his said indebtedness, the undersigned has considered the method of refunding mortgages provided in Home Owners' Loan Act of 1933, as passed by Congress and approved by the President, and the undersigned hereby consents, if said refunding can be consummated, to accept in full settlement of the claim of the undersigned the sum of $2334.00, face value of the bonds of Home Owners' Loan Corporation, to be adjusted with not exceeding $25.00 cash and thereupon to release all the claim of the undersigned against said property."

The respondents contend that this complaint does not state facts sufficient to constitute a cause of action since it alleges that the execution of the trust deed and the transfer of the other property was procured by fraud, since it appears that the misrepresentations complained of were misrepresentations of law and not of fact, and for the reason that no damage was suffered since the original debt was not increased. It is further argued that the transaction was not illegal or void as against public policy. In this connection it is argued that the Home Owners' Loan Act of 1933 did not expressly forbid the taking of second liens securing the difference between the face value of the bonds to be accepted under the terms of the act and the balance of the original indebtedness, and that no regulation concerning the taking of such a second lien was made by the HOLC until September, 1934, after the transactions here in question, at which time a

regulation was adopted providing that no loan would be made where a separate understanding or agreement calling for any payments other than those required by the corporation was made between the debtor and the original creditor.

In *McAllister* v. *Drapeau*, 14 Cal. (2d) 102 [92 Pac. (2d) 911], after quoting portions of the act and of regulations adopted on November 3, 1933, and January 9, 1934, which dates are prior to the transaction here in question, the court said:

"The rules and regulations contemplated that under some circumstances it would be to the interest of the home owner to give a second mortgage to the creditor to secure a part of the refunded debt, but such rules and regulations provided that the H. O. L. C. would not refund the first mortgage if the creditor demanded a second unless the financial ability of the debtor and the financial arrangements were such that the debtor would have a reasonable opportunity to pay off both mortgages. Obviously, before these facts could be ascertained, a full disclosure of the amount and the terms of the proposed second lien would have to be made to the H. O. L. C. The securing of a second lien by the creditor without such disclosure is clearly in violation of the letter and spirit of the statute and regulations. This is demonstrated not only by the terms of the statute and the regulations, but also by the language of the agreement above quoted which all creditors were required to sign wherein the creditor represented and agreed that he was accepting the bonds 'in full settlement of the claim of the undersigned.' "

In that case it appeared that the HOLC had no notice or knowledge of the existence of the second trust deed given to secure the balance of the original debt remaining after the acceptance of the Home Owners' Loan bonds. The court held that such a second lien to secure this balance was not permitted under the act, and the regulations adopted, unless a full disclosure of the amount and terms thereof was made to the HOLC, in order to enable it to determine the effect of such a second lien upon the Home Owners' loan. It was held that the consent agreement signed by the original creditor, which was practically identical with the one attached to the complaint in this case, constituted a valid release and an accord and satisfaction and that the second lien which was

taken was void as in violation of the public policy expressed in the act.

Under the authority just referred to it must be held that the transaction involved in the instant case was illegal and void. ■ While this complaint was not a model in all respects it was sufficient to state a cause of action. The above-quoted portion of paragraph XII plainly attempts to allege that the documents purporting to secure the balance of the original indebtedness were obtained by the respondents without notice to, or the knowledge of, the Home Owners' Loan Corporation. While the word "not" was omitted the intent of the allegation is clear, and, to say the least, an amendment should have been permitted. The gravamen of the complaint is that the transaction was illegal and that the instruments obtained as purported security for the balance of the debt were void. ■ The allegations of fraud and misrepresentation are material only as bearing upon the question of whether the appellant is *in pari delicto*. That contention is also here made by the respondents but is without merit. (*McAllister* v. *Drapeau, supra.*)

■ The respondents next contend that this cause of action is barred by the provisions of section 338, subdivision 4, of the Code of Civil Procedure, and that the complaint shows on its face that it is barred by laches on the part of the appellant. The action was begun on June 30, 1937. In *Maryland C. Co.* v. *Fidelity etc. Co.*, 71 Cal. App. 492 [236 Pac. 210], it is said: "Estoppel does not apply in such a case. A contract void as against public policy cannot be treated as valid by invoking such principle, nor can a party thereto waive his right to set up the defense of illegality in an action thereon brought by the other party." If this transaction is void it cannot be validated by the mere lapse of three years. The instruments here executed and delivered to the respondents were clouds upon title to properties belonging to the appellant, and since those instruments were void and she was not *in pari delicto* she had the right to bring an action to cancel them, and the code section relied upon does not apply.

■ The only other point raised is that this appeal was taken from the order sustaining the demurrer and not from the judgment. In this connection, the following facts appear: A minute order dated October 22, 1937, recites that the matter having theretofore been heard and submitted it is by the court

ordered that the demurrer be and the same is sustained without leave to amend. On November 18, 1937, notice of the sustaining of the demurrer without leave to amend was mailed to counsel for appellant at Long Beach, California. Judgment on demurrer was entered on November 18, 1937, and notice thereof, dated November 19, 1937, was on that day mailed to appellant's counsel at Long Beach. Notice of appeal, dated November 24, 1937, with an affidavit of the mailing of a copy thereof on that day to counsel for the respondents, was filed on November 26, 1937. This notice reads in part as follows: "You and each of you will please take notice, that the plaintiff in the above entitled action, hereby appeals from the judgment made and entered in the said Superior Court on the 22nd day of October, 1937, in favor of said defendants and against said plaintiff, and from the whole of said judgment, to the District Court of Appeals." While it thus appears that the notice of appeal refers to the date of the judgment as October 22, 1937, and that this date is incorrect as the judgment was actually entered on November 18, 1937, the notice is headed with the title of the court and cause and states that an appeal is taken from the judgment made and entered therein and from the whole of said judgment. The judgment had at that time been actually entered and the same appears in the transcript before us. Under these circumstances, the error as to the date of the judgment should be disregarded and we therefore hold that the notice of appeal was sufficient.

The judgment appealed from is reversed.

Griffin, J., and Marks, J., concurred.