[Civ. No. 12329. First Dist., Div. One. May 21, 1943.]

ELMER E. ROBERTSON et al., Appellants, v. L. F. HYDE et al., Respondents.

James H. Boyer for Appellants.

Albert K. Whitton and Raymond A. Ferrario for Respondents.

PETERS, P. J.—Plaintiffs appeal from a judgment for defendants entered after the trial court sustained defendants' general demurrer to an amended complaint without leave to amend. The amended complaint purported to set forth two causes of action. The first prayed for the cancellation of a promissory note for $2,773.50 secured by a deed of trust, which it is alleged constituted a cloud on the title of plaintiffs to certain real property previously purchased by plaintiffs from defendant Sarah C. Hyde. The second cause of action was to recover $420.88 which plaintiffs had previously paid on the promissory note. The trial court was of the view that plaintiffs had no cause of action under the facts alleged.

So far as pertinent to the present controversy, the complaint alleged the following facts:

Defendants Sarah C. Hyde and L. F. Hyde are mother and son, the mother being over seventy years of age. In August, 1939, Sarah C. Hyde owned certain real property in Oakland. On August 1, 1939, she sold and conveyed that realty to plaintiffs, causing them to execute their promissory note for $2,773.50 as part of the purchase price, which note was secured by a deed of trust on the property in question. The note was made payable to L. F. Hyde and he was named beneficiary of the deed of trust. The note and deed of trust were made out to the son of Sarah C. Hyde for the purpose of enabling Sarah C. Hyde to qualify for old age assistance from the state, to which she was not entitled, by making it appear that she owned no real property having a value in excess of $500. This transfer to the son of the note and deed of trust was voluntary and without consideration passing from the son to the mother, and was made solely for the purpose of making it appear that the mother was eligible for old. age payments from the state. This transaction was entered into by defendants "for the purposes and with the intent of perpetuating a fraud on the State of California." The Board of Supervisors of Alameda County had no knowledge of such voluntary transfer and at no time consented to the same. Plaintiffs had no knowledge of the fraudulent purpose and intent of the defendants and did not discover such intent until December 1, 1941, when they immediately repudiated and disaffirmed the contract. Sarah C. Hyde applied for old age benefits, and, in doing so, falsely represented to the authorities that she had not made any voluntary transfer of property for the purpose of apparently

qualifying for such aid. On these allegations it is plaintiffs' theory that they are entitled to have the note and deed of trust canceled, are entitled to a refund of the $420.88 paid on the note, and are entitled to keep the property free and clear of any claim of defendants. It is their contention that the instruments in question were made out to the son in pursuance of an illegal aim and purpose on the part of defendants; that they are consequently illegal and void; and that plaintiffs have a right to be relieved of the obligations thereunder and to a return of the payments made.

It is true that the transaction as described in the complaint between Mrs. Hyde and her son was in violation of the law. Section 2160 of the Welfare and Institutions Code, as it read in 1939, limited old age relief to citizens of the age of sixty-five years or more, with certain residential requirements "who has not made any voluntary assignment or transfer of property for the purpose of qualifying for such aid." Section 2163 of that code provided that an applicant was not entitled to aid if he owned personal property of a value in excess of five hundred dollars, while section 2164 provided that aid would not be granted any applicant who owned real property of the assessed value of $3,000 or more. On August 1, 1939, the date of the alleged transfer to the son, section 2007 of the Welfare and Institutions Code provided that it was a misdemeanor for anyone applying for old age relief to make any false statement or to use any fraudulent device in order to obtain an old age pension, or for anyone to aid or abet such practices. Section 2008 then provided that anyone who knowingly violated any provision of the pension law for which no penalty was otherwise provided was guilty of a misdemeanor.

Appellants, citing such cases as *City of Los Angeles* v. *Watterson,* 8 Cal.App.2d 331 [48 P.2d 87] ; *Asher* v. *Johnson,* 26 Cal. App.2d 403 [79 P.2d 457], and *City of Oakland* v. *California Const. Co.,* 15 Cal.2d 573 [104 P.2d 30], contend that it is the law that a contract founded upon an illegal consideration, or which is made for the purpose of doing anything prohibited by statute, or is intended to aid or to assist any person therein, is void. They also maintain that where, as here, the contract for payment still remains executory, relief should be granted at least the innocent party thereto who repudiates such contract because of the illegality.

(*Schmitt* v. *Gibson,* 12 Cal.App. 407 [107 P. 571]; *National Stone Tile Corp.* v. *Voorheis,* 93 Cal.App. 738 [270 P. 286]; *Glos* v. *McBride,* 47 Cal.App. 688 [191 P. 97]; *Woods* v. *Kern County Mut. etc. Assn.,* 34 Cal.App.2d 468 [93 P.2d 837].) These cases undoubtedly establish the general principles for which they are cited, and apply those principles to the facts of the cases there presented. None of the cases cited, however, on their facts, is in any way comparable to the instant case.

■ Appellants place their chief reliance on the cases involving the rescission of agreements made to circumvent the provisions of the Home Owners Loan Act. In those cases the creditor, after having voluntarily accepted the payment of the encumbrance on the terms specified by the Home Owners Loan Corporation, had the mortgagor-owner execute obligations secured as second encumbrances on the property. The courts, quite uniformly, have allowed the mortgagor-owner to avoid the second encumbrance and to recover back payments made thereon. (*McAllister* v. *Drapeau,* 14 Cal.2d 102 [92 P.2d 911, 125 A.L.R. 800]; *Woods* v. *Kern County Mut. etc. Assn.,* 34 Cal.App.2d 468 [93 P.2d 837]; *Morrison* v. *Landers,* 56 Cal.App.2d 607 [133 P.2d 34]; *Rockwood* v. *Brown etc. Invest. Co.,* 51 Cal.App.2d 241 [124 P.2d 612].) The rule of those cases is not here controlling. Those cases involved a statute that was passed for the main purpose of protecting small home owners who were unable to meet their obligations, and faced the loss of their homes. The obtaining of secret second liens by the creditors violated the basic public policy expressed in the act. It was held that the home owners were not *in pari delicto,* because as compared with the creditors they were only slightly at fault, and, moreover, they were not free agents, acting as they did under the threat of foreclosure. A second ground of these decisions was that in accepting payment from the Home Owners Loan Corporation the creditor entered into an accord and satisfaction of the original indebtedness, so that there was no consideration for the obligation secured by the second lien.

It is to be noted that in these cases the relatively innocent home owner was seeking to be relieved from the illegal transaction into which he had been forced by the creditor. That is not the situation here presented. In this case there was nothing illegal *per se* in the transaction between Sarah C. Hyde and the appellants. That transaction violated no

law. Mrs. Hyde had the legal right to sell the property and appellants had the legal right to buy. The illegality alleged did not involve the appellants at all. It consisted in the alleged voluntary transfer of the note and deed of trust by Mrs. Hyde to her son for the purpose of apparently qualifying for old age relief. That phase of the transaction, although entered into at the same time as the sale transaction, was separate and distinct from the sale transaction.

The position of appellants in this action is somewhat anomalous. They are seeking to rescind the obligation on the note, and yet retain the property which they purchased. In fact, they contend that they are not only entitled to this relief but also to a refund of all payments made on the note. Thus, appellants contend that respondents must suffer the loss of the note and deed of trust and the loss of the property. Such a holding would defeat the very purpose of the statute. In the present case it does not appear in the pleading whether Mrs. Hyde was successful or not in her attempt to secure the pension, but, obviously, so far as appellants are concerned, the same rule must be applied whether the attempt to defraud the state is successful or unsuccessful. The statute defines those eligible for relief. The Legislature has provided that only those who do not own property of a designated value shall be eligible. Pursuant to that policy it has prohibited voluntary transfers for the purpose of qualifying for the pension, and has made violation of the act a misdemeanor. Just what other remedies were available to the state when this transaction was entered into where such voluntary transfer was made, need not be here determined. Whether, as the law then existed, the state itself could set aside such a transfer, or whether the state had a lien on such property illegally transferred, are problems not here involved. But, if the purchaser of the property can avoid his obligation and retain the property, whatever rights the state might have in such property for the reimbursement of amounts of which it has been defrauded would be defeated. There is no allegation here that appellants were defrauded, or that the transaction as to them was not fair and equitable. Appellants are simply attempting to take advantage of a statute not passed for their benefit so as to escape their just obligations and to retain all the benefits.

The transaction between Sarah C. Hyde and the appellants, as already pointed out, was not *per se* illegal. It was connected with the allegedly illegal voluntary transfer to her

son. It is not the law that every transaction connected with an illegal transaction is itself illegal. Each case must turn on its own facts. The purpose of the statute which has been violated must be considered. In that connection, the court should consider whether a holding that the collateral transaction is illegal will tend to assist or defeat the main purpose of the statute. In the instant case, as already pointed out, to hold that the collateral agreement (the sale to appellants) is illegal would tend to defeat the main purpose of the statute in that it would effectually prevent the state from recovering any sums of which it has been defrauded.

This principle is stated in section 601 of the Restatement of Contracts as follows: ''If refusal to enforce or to rescind an illegal bargain would produce a harmful effect on parties for whose protection the law making the bargain illegal exists, enforcement or rescission, whichever is appropriate, is allowed.'' Many illustrations are given in the Restatement of this principle. Thus, illustration 1 is as follows: ''A, a bank, is forbidden by statute to invest in real estate mortgages, and the statute makes it criminal to do so. A, nevertheless, invests in such mortgages. Action can be maintained on the mortgage debt and to foreclose the mortgage, since otherwise the creditors and shareholders of the bank for whose protection the statute is enacted, would be injured.'' Cases illustrating this principle in this state are *Brittan* v. *Oakland Bank of Savings,* 124 Cal. 282 [57 P. 84, 71 Am.St.Rep. 58] ; *Savings Bank* v. *Burns,* 104 Cal. 473 [38 P. 102].

The court must also consider the connection between the illegal transaction and the transaction sought to be avoided. How closely a transaction must be connected with an illegal purpose in order to render the collateral transaction illegal is a question of degree. This principle is set forth in section 597 of the Restatement of Contracts. As an example of the application of the principle, illustration No. 3 states: ''A and others enter into an illegal combination in restraint of trade. A sells to B, who is not a party to the combination, goods of the kind to which the illegal restriction relates. The sale is not illegal and A can recover the price.''

These principles are conclusive on this appeal.

The judgment appealed from is affirmed.

Knight, J., and Ward, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 19, 1943.