119 Cal.Rptr.2d 479 (2002)
98 Cal.App.4th 113
HUSKINSON & BROWN, LLP, Plaintiff and Respondent,
v.
Mervyn H. WOLF et al., Defendants and Appellants.
No. B147298.
Court of Appeal, Second District, Division Four.
May 2, 2002.
Review Granted July 26, 2002.
*481 Law Offices of Marc Appell and Marc J. Appell, Los Angeles, for Defendants and Appellants.
Huskinson & Brown and Clark McCutchen for Plaintiff and Respondent.
*480 EPSTEIN, J.
Mervyn H. Wolf and the law firm Appell & Wolf (collectively, Wolf) appeal from a judgment in favor of another law firm, Huskinson & Brown, Limited Liability Partnership (Huskinson & Brown). Huskinson & Brown sued Wolf to recover a referral fee from a lawsuit which Huskinson & Brown referred to Wolf. The referral fee was calculated as a portion of Wolfs fees from the referred suit. Although the client in the referred suit did not consent in writing to the fee sharing agreement, as required by Rules of Professional Conduct, rule 2-200 (rule 2-200), the trial court found that Wolf would be unjustly enriched if permitted to keep the portion of the fee it had agreed to pay to Huskinson & Brown. The trial court alternatively allowed recovery of the cost of services rendered and expenses paid by Huskinson & Brown under quantum meruit and a common count for monies owed. Wolf argues that it was error to allow recovery under unjust enrichment or quantum meruit because the client did not consent in writing. We agree and reduce the judgment to the expenses actually paid by Huskinson & Brown.

FACTUAL AND PROCEDURAL SUMMARY
We treat this case as an appeal on the judgment roll, since it reaches us based only on the clerk's transcript. (Rubin v. Los Angeles Fed. Sav. & Loan Assn. (1984) 159 Cal.App.3d 292, 296, 205 Cal.Rptr. 455.) Because the case is presented in that posture, we presume that the trial court's findings of fact are supported by substantial evidence, and its conclusions of law are binding upon us unless error appears on the face of the record. (Bond v. Pulsar Video Productions (1996) 50 Cal.App.4th 918, 924, 57 Cal.Rptr.2d 917.) Except where otherwise indicated, the following facts are taken from the trial court's findings of fact.
Huskinson & Brown states that it is a law firm specializing in defense of health care providers. A client, Beverly Sanchez,[1] approached the firm with a potential medical malpractice case against a health care provider. Rather than undertake the representation of this client in court, with the attendant risk of conflict of interest, the firm referred the matter to Wolf. The two firms entered an oral agreement by which Wolf would pay Huskinson & Brown, as a referral fee, 25 percent of any attorney's fees Wolf received from its work on the referred matter.
Rule 2-200 conditions a fee splitting agreement among counsel from different law firms upon written consent from the client. Ms. Sanchez never consented in writing to the referral fee agreement. (There was evidence that Ms. Sanchez was informed of the arrangement before the case was referred to Wolf, but no evidence *482 that her consent to fee splitting was sought or given.) Huskinson & Brown alleges that Wolf agreed to obtain her written consent.
Wolf brought a suit on behalf of Ms. Sanchez. That action ended with a judgment in Ms. Sanchez's favor for $250,000. (We refer to this litigation as the Sanchez lawsuit.) Huskinson & Brown alleges that Wolf received attorney's fees of $73,991.66 from the proceeds of the judgment.
At some point before the case was referred to Wolf, Huskinson & Brown paid $800 to Dr. Rex Greene, a medical expert involved in the Sanchez lawsuit. Huskinson & Brown spent approximately 20 hours performing legal services in furtherance of the Sanchez lawsuit, which the trial court valued at $250 per hour. Huskinson & Brown did not produce any records or invoices for these hours.
After the judgment was satisfied in the Sanchez lawsuit, Huskinson & Brown wrote twice to Wolf asking for its 25 percent share of the attorney's fees and reimbursement of the $800 in expenses. After receiving the second letter, Wolf responded with a letter that acknowledged the debt but asked for time to pay it due to financial hardship. The trial court found that, at the time Wolf received its attorney's fees in the Sanchez lawsuit, it had no intention of honoring its agreement to pay the referral fee.
After waiting seven months for payment, Huskinson & Brown sued Wolf to recover the referral fee. The second amended complaint, which is the operative pleading, sought recovery under the following causes of action: (1) breach of contract, (2) breach of partnership, (3) breach of fiduciary duty, (4) conversion, (5) fraud, (6) unfair business practices, (7) monies owed, (8) unjust enrichment, and (9) quantum meruit. Wolf demurred. The record does not contain the ruling on the demurrer, but we infer that it was overruled.
The matter was tried to the court. The court disallowed recovery for breach of contract because written consent had not been obtained from Ms. Sanchez. The court did not allow recovery from fraud due to insufficiency of evidence, and it made no statement as to the third, fourth and sixth causes of action. The court awarded Huskinson & Brown $18,497.81 under the unjust enrichment cause of action.[2] In the alternative, the court awarded Huskinson & Brown $5,800 plus interest for monies owed and quantum meruit, including $5,000 in attorney's fees for the 20 hours Huskinson & Brown expended.
The judgment also awarded Huskinson & Brown $2,772.88 in prejudgment interest and $1,073.00 in costs and disbursements. A nunc pro tunc correction to the judgment four months later eliminated the prejudgment interest award and reduced the costs and disbursements to $377.00.
Wolf filed a timely appeal from the judgment.[3]

*483 DISCUSSION

I
Except between associates, partners, or fellow shareholders, an attorney may not divide a fee for legal services with another attorney unless a full disclosure of the arrangement has been made to the client and the client has consented to the arrangement in writing. (Rule 2-200(A).) Although the attorneys agreed to share a legal fee in the Sanchez lawsuit, no written consent from Ms. Sanchez was obtained. Wolf argues that the trial court erred in allowing Huskinson & Brown to recover, under an unjust enrichment theory, the amount it would have been entitled to under the referral fee agreement.
Wolf relies on Margolin v. Shemaria (2000) 85 Cal.App.4th 891, 102 Cal.Rptr.2d 502, which held that where one attorney refers a case to another and the second agrees to obtain the client's written consent to a referral fee under rule 2-200 but fails to do so, the second attorney is not estopped from asserting noncompliance with the rule as a basis for avoiding payment of the referral fee. (Id. at p. 901, 102 Cal.Rptr.2d 502.) The Margolin court held that even where an attorney is relying on his or her own failure to obtain written consent from the client to avoid paying a referral fee, that attorney is not sufficiently unjustly enriched by the retained referral fee to be estopped from asserting rule 2-200 as a defense. The reason lies in the purpose for the rule: to protect clients, not referring attorneys. The court also based its decision on the fact that the referring attorney could have obtained the written consent from the client. (Margolin, supra, at pp. 901-902, 102 Cal.Rptr.2d 502.)
On analogous facts, the trial court in this case awarded damages on Huskinson & Brown's unjust enrichment theory. In its Statement of Decision, issued before Margolin was decided, the court reasoned that the failure to obtain written consent did not harm the client because the referral fee did not result in higher attorney's fees. The court found that Wolf had agreed to pay a referral fee, and that Wolf would be unjustly enriched by being allowed to enter into that agreement then denying its existence. The court stated that "forfeiture" of the fee by Huskinson & Brown would be disproportionate to the illegality of the arrangement.
The trial court did not have the benefit of the reasoning in Margolin to guide its decision. We see no basis for disagreement with the analysis of the relevant rules of law in Margolin. Huskinson & Brown is presumed to have been aware of the requirement under rule 2-200, and could have protected itself by obtaining written consent from Ms. Sanchez. (Margolin v. Shemaria, supra, 85 Cal.App.4th at pp. 901-902, 102 Cal.Rptr.2d 502.) It was not reasonable for Huskinson & Brown to rely on Wolfs promise to obtain Ms. Sanchez's written consent to the feesharing agreement. (Id. at p. 901, 102 Cal.Rptr.2d 502.)
Huskinson & Brown would distinguish Margolin from the present case because: Margolin was a "pure referral" case while in this case Huskinson & Brown spent about 20 hours on the matter; Margolin did not find one party more culpable than the other; and in this case, unlike Margolin, the referred firm acknowledged the referral fee in a letter to the referring firm. None of these facts requires a different result.
Whether the referring attorney worked on the matter or not is irrelevant because the language of rule 2-200 expressly prevents any fee division (except between partners, associates, or shareholders) without written consent of the client. (Rule 2-200(A).) As Margolin points out, *484 the purpose of the rule is consumer protection, not attorney protection. (Margolin v. Shemaria, supra, 85 Cal.App.4th at p. 902, 102 Cal.Rptr.2d 502.) It is a prophylactic rule. The consumer is served by full disclosure and written consent whether the referring attorney performs no work or performs 20 hours of work.
Culpability is a factor courts consider in deciding whether to make an exception to the rule against enforcement of illegal contracts to avoid unjust enrichment; other factors include the nature of the illegality and the policies to be served by enforcement or by denying enforcement. (Dunkin v. Boskey (2000) 82 Cal. App.4th 171, 196, 98 Cal.Rptr.2d 44.) As Wolf points out, the issue of relative culpability was not discussed in Margolin. Here, the trial court's decision may be understood to reflect a view that Wolf was culpable because, though it promised to pay the referral fee, it did not intend to do so when it received the fees. The attorney in Margolin who accepted the referred case also had agreed to pay a referral fee. (Margolin v. Shemaria, supra, 85 Cal. App.4th at pp. 896-897, 102 Cal.Rptr.2d 502.) We see no significant difference in culpability that would warrant an exception here but not in Margolin.
The significant writing, missing in Margolin as well as in this case, was one that would have fulfilled both the rule's literal requirement and its consumer-protection purposea consent signed by the client. (Margolin v. Shemaria, supra, 85 Cal. App.4th at p. 903, 102 Cal.Rptr.2d 502.) The defendant attorney in Margolin also wrote a letter agreeing to pay a referral fee, although that letter acknowledged the need for written client consent before the fee could be paid. (Id. at p. 896, 102 Cal.Rptr.2d 502.) That letter, though not an unconditional agreement to pay a referral fee, arguably served the consumer protection interest of the rule more closely than the letter here from Wolf to Huskinson & Brown because it was sent to the client, while here the letter was only from one attorney to the other. Thus, to the degree the cases are distinguishable at all, the facts in Margolin present a more appealing basis for disregarding the rule than is present in this case. In the end, the rule properly applies to both.
Huskinson & Brown argues that it is discriminatory and unfair to deny recovery of a share of attorney's fees under unjust enrichment or quantum meruit even though there is no written consent from the client as required by rule 2-200. Huskinson & Brown fails to show why this rule is any more burdensome than any other requirement for a writing, such as Civil Code, section 1624, which Margolin analogizes to rule 2-200. (Margolin v. Shemaria, supra, 85 Cal.App.4th at p. 901, 102 Cal.Rptr.2d 502.)
Huskinson & Brown contends that rule 2-200 is especially burdensome because of the harsh consequences it imposes in cases where no writing was obtained due to the dishonesty of an attorney, or when one is lost, stolen, damaged, or otherwise inadmissible.[4] The Evidence Code eliminates this burden by allowing the use of "otherwise admissible secondary evidence" to prove the content of a writing that has been lost or destroyed, or one that its proponent cannot reasonably procure. (Evid.Code, §§ 1521, subd. (a), 1523, subds. (b) & (c)(1).) There is nothing in rule 2-200 that prevents a party from *485 proving the client's written consent to fee sharing by such secondary evidence.
Huskinson & Brown argues the trial court's ruling should be upheld because courts enforce illegal contracts where the conduct of the parties is not equally wrong, if the violation does not involve serious moral turpitude, when refusal to enforce would unjustly enrich one party and be disproportionately harsh to the other, and where enforcement serves the purpose of the statute. It argues that Norwood v. Judd (1949) 93 Cal.App.2d 276, 209 P.2d 24 (and Denning v. Taber (1945) 70 Cal. App.2d 253, 160 P.2d 900, upon which Norwood relied) provides a basis for the trial court's decision.
In Nonvood, the court allowed one partner in a contracting venture to recover from another for a share of the assets and profits after the partnership dissolved. (Id. at p. 290, 209 P.2d 24.) The illegality in Norwood was that neither the plaintiff partner nor the partnership was licensed as required by law, although the defendant partner did hold a license. When the partnership dissolved, the partners agreed to divide the assets and profits. (Id. at p. 278, 209 P.2d 24.) The court ruled "equity can and will grant relief where the court is not required, in granting the relief, to lend its aid in enforcing a transaction illegal only because a permit that could have been secured was not secured." (Id. at p. 284, 209 P.2d 24.) In other words, relief was possible because the cause of action was not predicated on the illegal partnership agreement but "on a new promise arising out of the executed partnership agreement." (Ibid.)
Our Supreme Court pointed to this distinction in refusing to enforce an agreement between an unlicensed subcontractor and a licensed contractor. (Lewis & Queen v. N.M. Ball Sons (1957) 48 Cal.2d 141, 152, 308 P.2d 713.) In Lewis & Queen, the contractor hired the subcontractor to do an entire state construction project, contrary to state requirements that the contractor itself perform half the work, then refused to pay the subcontractor for some of the work. (Id. at p. 145, 308 P.2d 713.) The action in Lewis & Queen was one to "enforce directly an illegal contract, not merely to obtain an accounting for profits arising from one." (Id. at p. 152, 308 P.2d 713.)
As in Lewis & Queen, the present action is one to enforce an illegal contract, not to obtain an accounting for profits arising from a contract. Unlike Norwood, there was no secondary, untainted agreement which the court could enforce without enforcing the illegal agreement.[5] The only agreement found by the trial court was the illegal one, in which Wolf would pay Huskinson & Brown a portion of the attorney's fees without regard to the requirements of rule 2-200.
Huskinson & Brown relies upon several other cases, which we next discuss, for the proposition that illegal contracts may be enforced under the proper circumstances. None justifies an exception to the application of rule 2-200.
In Asdourian v. Araj (1985) 38 Cal.3d 276, 211 Cal.Rptr. 703, 696 P.2d 95, the court found that a contractor who obtained a license under a fictitious business name but did business under his own name was permitted to sue a customer for nonpayment *486 despite lack of "literal compliance" with a statute. The statute barred resort to state court by unlicensed contractors. The court reasoned that the purpose of the statute was satisfied. (Id. at pp. 279, 285-286, 211 Cal.Rptr. 703, 696 P.2d 95.) Literal compliance would not have provided the customer "with any greater assurances that he was dealing with an experienced and competent contractor." (Id. at p. 286, 211 Cal.Rptr. 703, 696 P.2d 95.) Here, although payment of the referral fee now may not harm Ms. Sanchez, failure to inform her and obtain her written consent is inconsistent with the consumer protection purpose of the statute.
In Homestead Supplies, Inc. v. Executive Life Ins. Co. (1978) 81 Cal.App.3d 978, 147 Cal.Rptr. 22, the illegality was an insurance contract that offered the insured a rate on life insurance lower than published rates as an inducement to buy the insurance. This violated a law against inducements to enter an insurance contract. (Id. at p. 991, 147 Cal.Rptr. 22.) When, years later, the insurer sought the published rate in a renewal, the insured sued for declaratory relief. (Id., at p. 984, 147 Cal.Rptr. 22.) The court enforced the illegal lower rate, finding: the insured was less culpable because he was not presumed to know about the law against inducements; serious moral turpitude was not involved; and it would be inequitable to allow the insurer to benefit from the illegal inducement. (Id. at p. 991, 147 Cal.Rptr. 22.) Although the trial court in this case also found a lack of serious moral turpitude, the factors that favored the insured in Homestead Suppliesknowledge of the rules and equity of reliance on an illegalitydo not favor either party in this case. Both law firms should have known about rule 2-200, and it was not reasonable for Huskinson & Brown to rely on Wolfs promise to obtain compliance with the rule. (Margolin v. Shemaria, supra, 85 Cal.App.4th at p. 901, 102 Cal.Rptr.2d 502.)
Wilson v. Stearns (1954) 123 Cal.App.2d 472, 267 P.2d 59, is distinguishable because the court did not find the contract involved was illegal. (Id. at p. 480, 267 P.2d 59.)
In Robertson v. Hyde (1943) 58 Cal. App.2d 667, 137 P.2d 703, buyers sought to cancel a promissory note secured by a deed of trust to certain property, recover payments made on the note, and keep the property. The seller, a senior citizen, had illegally transferred the note and the deed of trust to her son in order to qualify for means-tested pension benefits from the state. (Id. at p. 668, 137 P.2d 703.) The court enforced the illegal transfer, refusing to grant the requested relief because doing so would "defeat the very purpose of the statute" by leaving the state with no property in which it might retain an interest "for the reimbursement of amounts of which it has been defrauded." (Id. at p. 671, 137 P.2d 703.) Here, in contrast, the consumer protection purpose of the rule would be harmed if the illegal contract were enforced. (Margolin v. Shemaria, supra, 85 Cal.App.4th at p. 903, 102 Cal. Rptr.2d 502.)
In summary, sound policy supports a decision against enforcing this contract, which violates rule 2-200. Margolin v. Shemaria, supra, 85 Cal.App.4th 891, 102 Cal.Rptr.2d 502 reached the same result on closely analogous facts. Huskinson & Brown fails to convince us that Margolin can be distinguished or that there is legal justification for enforcing the present illegal contract.

II
Rule 2-200 does not require client consent if fees are split between a lawyer and his or her partner, associate or fellow shareholder. (Rule 2-200(A).) Huskinson & Brown argues that it should be deemed *487 an "associate" of Wolf because it advanced some expenses and provided 50 to 60 hours of legal services that benefited Ms. Sanchez and Wolf, and which Wolf contracted with Huskinson & Brown to perform.
Huskinson & Brown analogizes its situation to that of the plaintiff in Sims v. Charness (2001) 86 Cal.App.4th 884, 103 Cal.Rptr.2d 619. In Sims, Lawyer Charness hired Lawyer Sims, a more experienced litigator, to try several cases. (Id. at p. 892, 103 Cal.Rptr.2d 619.) Charness was the attorney of record, provided the office space and letterhead, kept the files, advanced and was required to approve the costs, and retained authority over trial decisions. During the time Sims handled these cases, Charness was his sole source of employment. Sims merely tried the cases. (Id. at pp. 891-892, 103 Cal.Rptr.2d 619.) The relationship between the two lawyers was analogous to one in which Charness was the employer and Sims was the employee. The court concluded: "Charness retained control over Sims's involvement just as Charness would have in the case of an associate or an employee in his office. Accordingly, their contingency fee-sharing agreement was not subject to the requirements of [rule 2-200]." (Id. at p. 892, 103 Cal.Rptr.2d 619.)
None of these indicia of employment or association was present in the relationship between Huskinson & Brown and Wolf. Huskinson & Brown paid $800 to one expert but none of the other expenses. The trial court found all but 20 of the 50 to 60 hours Huskinson & Brown expended on the matter were in discussion with Ms. Sanchez "regarding the status of her case, matters of law and encouragement ...." Huskinson & Brown's own allegations state that its function in the referred case was to "monitor and assist with the case but not enter any appearance as counsel of record." The trial court's findings, as well as Huskinson & Brown's letters to Wolf, characterize the fee not as compensation for work that a subordinate might perform for a superior, but as a "referral fee." Neither party claimed to have worked out of the other's office or maintained files for the benefit of the other. Neither claimed to be the sole source of employment of the other. None of the trial court's findings indicated that either Huskinson & Brown or Wolf maintained control of the other's work.
These distinctions demonstrate the inapplicability of the holding in Sims. Rule 2-200 did not apply in Sims because it was never intended to affect "`compensation arrangements involving outside lawyers functioning on a particular matter essentially on the same basis as an employee of the law office.'" (Sims v. Charness, supra, 86 Cal.App.4th at p. 890, 103 Cal. Rptr.2d 619, quoting State Bar Formal Opinion No.1994-138, Discussion, pt. A, italics removed.) Sims acted essentially as Charness's employee. Because neither party in this case acted as an employee of the other, rule 2-200 requires written client consent to the fee division.

III
The trial court found that Huskinson & Brown paid $800 in expenses towards the Sanchez lawsuit and performed $5,000 worth of attorney services. On the seventh and ninth causes of action, for monies owed and quantum meruit, the trial court awarded $5,800, as a fallback alternative to the unjust enrichment award. (A case concerning whether the recovery of attorney's fees under quantum meruit is barred by failure to comply with rule 2-200 is currently pending before our Supreme Court. (Chambers v. Kay, review granted July 11, 2001, S098007.))
Wolf argues that the attorney services Huskinson & Brown provided to Ms. *488 Sanchez were performed in furtherance of the illegal agreement to split fees, not with an expectation of hourly compensation, and that quantum meruit is not a valid basis for recovery where a contract exists between the parties that specifies a different agreement.[6] At oral argument, Wolf conceded that Huskinson & Brown should be allowed to recover the $800 in expenses.
Wolfs argument fails on its own merits. Because the "contract" was illegal for failure to adhere to rule 2-200, there effectively was no contract between Huskinson & Brown and Wolf. "When parties have an actual contract covering a subject, a court cannot ... substitute the court's own concepts of fairness regarding that subject in place of the parties' own contract." (Hedging Concepts, Inc. v. First Alliance Mortgage Co. (1996) 41 Cal.App.4th 1410, 1420, 49 Cal.Rptr.2d 191.) But where, as here, there is no contract, an equitable theory such as quantum meruit may supply contract terms that are "implied by law for reasons of justice." (Id. at p. 1419, 49 Cal.Rptr.2d 191.)
Whether Huskinson & Brown is awarded a portion of the attorney's fees under an unjust enrichment theory or under quantum meruit, the portion of the award that can be attributed to legal services provided by Huskinson & Brown would still amount to a division of legal fees. The policy reasons that militate against enforcement of an express contract that violates rule 2-200 apply as well to a purported implied contract where there is no compliance with rule 2-200. Therefore, it was error for the trial court to allow Huskinson & Brown to recover $5,000 for legal services rendered in the Sanchez lawsuit.
However, the policy against sharing legal fees without client consent does not prevent Huskinson & Brown from recovering the cash expenses it actually advanced in furtherance of the Sanchez lawsuit. Rule 2-200 only prohibits divisions of legal fees without consent. (Rules Prof. Conduct, rule 2-200(A).) We infer that the trial court awarded the $800 under the monies owed cause of action.[7] Because the trial court found this amount was money owed by Wolf to Huskinson & Brown, not division of a legal fee, no consent from Ms. Sanchez is required to allow it to be paid.

IV
The trial court awarded $377.00 in "costs and disbursements pursuant to [Code of Civil Procedure section] 1032." Under that statute, the prevailing party in a lawsuit is entitled to recover its costs. (Code Civ. Proc, § 1032, subd. (b).) Although we have reduced the damages from *489 $18,497.81 to $800, Huskinson & Brown remains the prevailing party in this lawsuit. The parties do not dispute that Huskinson & Brown incurred $377.00 in costs. Therefore, we will not disturb the portion of the judgment awarding $377.00 pursuant to Code of Civil Procedure section 1032.

DISPOSITION
The judgment is reversed. The trial court is directed to enter a new and different judgment awarding Huskinson & Brown $800.00 for damages and $377.00 for costs and disbursements pursuant to Code of Civil Procedure section 1032. The parties shall bear their own costs on appeal.
We concur: CHARLES S. VOGEL, P.J, and CURRY, J.
NOTES
[1] Ms. Sanchez is referred to at one point in Appellant's opening brief as Dorothy Sanchez. All other references in the record give her first name as Beverly.
[2] The Statement of Decision initially stated that the recovery would be $18,497.91, which is 25 percent of the $73,991.66 fee. The next page of the Statement put the recovery at $18,497.81. The judgment that was then issued, as well as a nunc pro tunc corrected judgment, used the $18,497.81 figure. The dime difference is not explained.
[3] The judgment was filed November 16, 2000, and a nunc pro tunc corrected judgment was filed March 23, 2001. The appeal from the "Judgment/Nunc Pro Tunc Judgment" was filed January 10, 2001. A nunc pro tunc order is one that is issued by a court to correct a clerical error in a previous rendition of an order or judgment, and relates back to the date of the order or judgment being corrected. (See APRI Ins. Co. v. Superior Court (1999) 76 Cal.App.4th 176, 185-186, 90 Cal. Rptr.2d 171.) Although the appeal was filed before the correction was filed, we treat it as being from the order as corrected.
[4] Huskinson & Brown states that a written consent exists in this case but is inadmissible because the witness necessary to authenticate it is not available. The record does not substantiate this claim.
[5] Huskinson & Brown's argument that there was a separate agreement under which Wolf would make the required disclosure and obtain Ms. Sanchez's written consent is unavailing because the trial court found insufficient evidence to support the existence of that agreement. By drawing this distinction we do not intimate that the argument would be meritorious if the separate agreement had been established.
[6] In its reply brief, Wolf disputes for the first time the correctness of the quantum meruit award in response to a footnote in the respondent's brief that merely stated that the quantum meruit award has not been appealed. "Although it is true an appellant should state in his opening brief the points upon which he relies and that matters first raised in a reply brief may be disregarded, this court `is undoubtedly at liberty to decide a case upon any points that its proper disposition may seem to require, whether taken by counsel or not.'" (Burns v. Ross (1923) 190 Cal. 269, 275-276, 212 P. 17, quoting Hibernia Sav. and Loan Soc. v. Farnham (1908) 153 Cal. 578, 584, 96 P. 9.) Mindful of the potential unfairness of deciding an issue raised in this manner, we gave Huskinson & Brown an opportunity to respond in a supplemental brief.
[7] The trial court grouped the monies owed and quantum meruit causes of action together in awarding $5,000 for attorney services and $800 in expenses. Quantum meruit is a theory of restitution that allows recovery for the value of services rendered. (Maglica v. Maglica (1998) 66 Cal.App.4th 442, 449, 78 Cal. Rptr.2d 101.) The $800 expense was not a service rendered, therefore it must have been money owed.