[No. G043073. Fourth Dist., Div. Three. Apr. 26, 2011.]

SHELBY E. BARRY, Plaintiff and Appellant, v.
OC RESIDENTIAL PROPERTIES, LLC, Defendant and Respondent.

COUNSEL

Law Offices of David A. Elwell and David A. Elwell for Plaintiff and Appellant.

Law Offices of Steven D. Silverstein and Steven D. Silverstein for Defendant and Respondent.

OPINION

**RYLAARSDAM, Acting P. J.**—Plaintiff Shelby E. Barry filed a petition in the superior court to determine the redemption price for her unit in a common interest development that defendant OC Residential Properties, LLC, had acquired at a nonjudicial foreclosure sale. (Civ. Code, § 1367.1, subd. (g); Code Civ. Proc., § 729.070, subd. (a).) The trial court ruled the amount due was $18,048.71, a sum that included over $17,900 in expenses defendant paid for maintenance and repair work on the unit after the foreclosure sale, an electric bill, and interest on the foreclosure sale purchase price. Plaintiff challenges the inclusion of these sums in the redemption price and the constitutionality of the procedure for determining the amount she needed to pay to redeem the property. Finding no error, we shall affirm the order.

## FACTS

In 1977, plaintiff acquired a unit in a common interest development. Over the years, she leased the unit to others.

Plaintiff failed to pay the monthly association fee. In June 2008, Associated Lien Services, the trustee under an October 2006 lien recorded by the homeowners association, issued a notice of trustee's sale. According to the notice, "the unpaid balance of the obligation secured by the property," plus costs, exceeded $10,000. Initially, the sale was scheduled for July 2008 but it was continued until June 17, 2009.

On the latter date, defendant purchased the unit at the foreclosure sale for $66,092.60. The sale was subject to plaintiff's right of redemption.

At the time of the foreclosure sale the unit was vacant. In a declaration supporting her petition, plaintiff claimed her "last tenant made substantial improvements" and the property was "in a condition such that I could re-rent it" with only some "minimal cleaning . . . ."

After purchasing the unit at the foreclosure sale, defendant paid a locksmith $336.11 to change the locks. One of its employees claimed, "Upon entering the . . . property on 6/17/09, . . . [defendant] discovered the property in need of repair and rehabilitation."

Between June 22 and July 2 defendant (1) paid a pest control company $800 to repair termite damage to the unit; (2) hired a contractor to make repairs, paying $16,800 for the work; and (3) paid an electricity bill for $17.15.

In her declaration, plaintiff claimed that, on July 3, she had a locksmith replace the locks. She also asserted "[a]n inspection of [the] property was made at that time which disclosed . . . the work undertaken by [defendant] was not complete," and the unit "could not be rented in the condition it was in."

The trustee sent plaintiff a letter enclosing a schedule showing the balance due to redeem the unit was $29,548.71 after deducting nearly $57,900 then held in trust. The schedule included the sums mentioned above, plus two months' homeowners association assessments, taxes, collection costs, and $770 for two months' interest on defendant's purchase price. Plaintiff objected to including the repair expenses, utility payment, and interest in the redemption price. She deposited $11,500 with the trustee and filed the current petition for a judicial determination of the amount owed.

After a hearing, the court issued an order declaring "the additional amount required to redeem the property total[ed] $18,048.71," constituting the difference between plaintiff's deposit and the balance claimed by the trustee. In part, the court found plaintiff "failed to meet her burden of proof to show that

the work performed was not for the reasonable maintenance, upkeep, and repair of improvements on the property." Although not supported by the appellate record, plaintiff's opening brief asserts she timely paid the additional sum due and redeemed the unit.

## DISCUSSION

### 1. *Introduction*

Generally, there is no right of redemption in nonjudicial foreclosure proceedings. (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1236 [44 Cal.Rptr.2d 352, 900 P.2d 601].) But this case involves the foreclosure of a unit in a common interest development that resulted from plaintiff's failure to pay the homeowners association's monthly assessment for maintenance and preservation of the development's common areas. (Civ. Code, §§ 1367, subd. (a), 1367.1, subd. (g) [association may enforce lien for delinquent assessments through "sale by . . . trustee"].) Code of Civil Procedure section 729.035 declares, "Notwithstanding any provision of law to the contrary, the sale of a separate interest in a common interest development is subject to the right of redemption . . . if the sale arises from a foreclosure by the association of a common interest development pursuant to subdivision (g) of [s]ection 1367.1 of the Civil Code . . . ." (See also Civ. Code, § 1367.4, subd. (c)(4) ["A nonjudicial foreclosure by an association to collect upon a debt for delinquent assessments shall be subject to a right of redemption."].)

Code of Civil Procedure section 729.060, subdivision (a) requires "[a] person who seeks to redeem the property [to] deposit the redemption price with the levying officer who conducted the sale before the expiration of the redemption period." Subdivision (b) of this statute defines the redemption price as "the total of the following amounts . . . . [¶] (1) The purchase price at the sale. [¶] (2) The amount of any assessments or taxes and reasonable amounts for fire insurance, maintenance, upkeep, and repair of improvements on the property. [¶] (3) Any amount paid by the purchaser on a prior obligation secured by the property to the extent that the payment was necessary for the protection of the purchaser's interest. [¶] (4) Interest on the amounts described in paragraphs (1), (2), and (3) . . . ." In addition, subdivision (c) of Code of Civil Procedure section 729.060 authorizes an offset to the redeeming party for "[r]ents and profits from the property paid to the purchaser or the value of the use and occupation of the property to the purchaser . . . ."

■ After the trustee notified plaintiff of the amount required to redeem the property, she challenged it by filing a petition under Code of Civil Procedure section 729.070. This statute creates a procedure allowing one

"seeking to redeem the property [who] disagree[s with] the redemption price" to petition "the court for an order determining the redemption price . . . ." (Code Civ. Proc., § 729.070, subd. (a).) The statute requires a hearing on the petition at which "the person seeking to redeem the property has the burden of proof." (Code Civ. Proc., § 729.070, subds. (c), (e).) "At the conclusion of the hearing, the court shall determine by order the amount required to redeem the property" based "upon affidavit or evidence satisfactory to the court" and, "[i]f an amount in addition to that deposited with the levying officer is required to redeem the property, the person seeking to redeem shall" have "10 days after the issuance of the order[ to] pay the additional amount . . . ." (Code Civ. Proc., § 729.070, subds. (f), (g).)

The trial court ruled against plaintiff, finding she had not met her burden of proof to show the redemption price demanded by the trustee exceeded the legally permitted amount or that she was entitled to an offset.

## 2. Due Process

Plaintiff attacks the constitutionality of the redemption procedure created by Code of Civil Procedure section 729.070. She claims defendant's "conduct [in entering the unit] prevented [her] from describing the [property's] condition" and therefore the statute "does not afford a meaningful hearing for [a] . . . homeowner to meet her[] burden of proof."

■ Both the United States Constitution and the California Constitution guarantee no one may be deprived of his or her property " 'without due process of law.' " (*Morongo Band of Mission Indians v. State Water Resources Control Bd.* (2009) 45 Cal.4th 731, 736 [88 Cal.Rptr.3d 610, 199 P.3d 1142].) In civil proceedings, this guarantee includes the right to have a matter decided by a tribunal having jurisdiction of the action that is free of bias and conducts a full hearing on the matter after the parties have been given notice of the proceeding and an opportunity to appear and participate in it. (7 Witkin, Summary of Cal. Law (10th ed. 2005) Constitutional Law, §§ 640–642, pp. 1041–1044; 2 Witkin, Cal. Procedure (5th ed. 2008) Jurisdiction, §§ 302–304, 307–308, pp. 914–916, 918–921.) "When the Constitution requires a hearing, it requires a fair one, one before a tribunal which meets established standards of procedure. . . . Procedure is the fair, orderly, and deliberate method by which matters are litigated. To judge in a contested proceeding implies the hearing of evidence from both sides in open court, a comparison of the merits of the evidence of each side, a conclusion from the evidence of where the truth lies, application of the appropriate laws to the facts found, and the rendition of a judgment accordingly." (*Estate of Buchman* (1954) 123 Cal.App.2d 546, 560 [267 P.2d 73].)

■ Plaintiff's argument is meritless. She does not claim the trustee failed to give her notice of her default or the impending nonjudicial foreclosure sale resulting from her failure to pay monthly homeowner assessments. After the foreclosure sale, she admittedly received an itemized notice of the amount needed to redeem the property. The procedure created by Code of Civil Procedure section 729.070 afforded her a means to challenge the amount demanded by the trustee with a noticed hearing before an unbiased judicial tribunal where she was allowed to present evidence and argument on the issue.

Plaintiff claims this procedure fails to "safeguard[] . . . the right to discovery" and she was not given a chance to document the condition of the premises before defendant entered and began making modifications to the unit. But she also acknowledged her last tenant vacated the premises before the foreclosure sale, thereby giving her possession of the premises to inspect and document the unit's habitable condition. There is no explanation of why plaintiff could not have obtained a declaration from the former tenant or photographically documented the condition of the premises when the last tenancy ended.

■ Nor did defendant engage in wrongdoing when it entered the unit. By statute, it had the right "from the time of sale until redemption . . . to enter the property during reasonable hours to repair and maintain the premises . . . ." (Code Civ. Proc., § 729.090, subd. (c).) Thus, we reject plaintiff's denial of due process claim.

## 3. *Defendant's Right to Enter and Repair the Unit*

Next, plaintiff repeats her argument defendant acted as a trespasser, claiming it failed to contact her before having a locksmith change the locks and then engage a contractor to perform work that prepared the property for sale.

Plaintiff acknowledges Code of Civil Procedure section 729.090, subdivision (c) authorizes the purchaser at a foreclosure sale to enter the property "to repair and maintain the premises . . . ." While this statute limits entry to "reasonable hours" (*ibid.*), nothing in the statute required defendant to notify plaintiff or seek her cooperation. In addition, when the foreclosure sale occurred the unit was admittedly vacant and plaintiff had not shown any interest in recovering the property.

After entry, defendant began rehabilitating the unit with the intention of reselling it. Contrary to plaintiff's claim, this effort did not alter the unit's intended use. For that reason, plaintiff's reliance on *Dwyer v. Carroll* (1890)

86 Cal. 298 [24 P. 1015] is unpersuasive. There a landlord reentered the leased premises, a building used as a hotel, purportedly to make needed repairs to the first floor. Instead, the landlord raised the building's foundation several feet and added a cellar and a new floor, thereby requiring the plaintiff and his lodgers to vacate the premises. Here, the unit was vacant when defendant entered and the work performed by it was to make the unit habitable. Thus, whether occupied by a third party purchaser or a tenant, in either case the unit would be employed for the same purpose, habitation.

4. *The Sums Charged for the Unit's Maintenance, Upkeep, and Repair*

Next, plaintiff presents a series of arguments attacking the amount awarded to defendant for the work performed on the unit before she retook possession of it.

■ One claim is that the trial court erred by not imposing the burden of proof to establish the reasonableness of the repair costs on defendant. Plaintiff cites several policy reasons why defendant should carry the proof burden. But, as she acknowledges, under Evidence Code section 500, "[e]xcept as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he [or she] is asserting." Here, Code of Civil Procedure section 729.070, subdivision (e) expressly provides "[a]t the hearing on the petition, the person seeking to redeem the property has the burden of proof." Thus, by statute the Legislature has declared the party challenging a trustee's stated redemption price carries the burden to establish the validity of its objections to the disputed amounts.

Plaintiff's second claim concerns the license status of Axcell Construction, the contractor defendant hired to repair and rehabilitate the unit. In support of her petition, plaintiff submitted evidence Axcell's license was suspended at the time it worked on the unit. She argues defendant "cannot pass on [to her] an unlawful obligation for payments made to the unlicensed contractor . . . ." We disagree with this interpretation of the applicable law.

■ Business and Professions Code section 7031, subdivision (a) declares "no person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action . . . for the collection of compensation for the performance of any act or contract where a license is required by this chapter without alleging that he or she was a duly licensed contractor at all times during the performance of that act or contract, regardless of the merits of the cause of action brought by the person . . . ." While "[g]enerally a contract made in violation of a regulatory statute is void" and "courts will not ' "lend their aid to the enforcement of an illegal agreement or one against

public policy" ' " (*Asdourian v. Araj* (1985) 38 Cal.3d 276, 291 [211 Cal.Rptr. 703, 696 P.2d 95]), " 'the rule is not an inflexible one to be applied in its fullest rigor under any and all circumstances. A wide range of exceptions has been recognized.' [Citation.]" (*ibid.*).

■ "It is not the law that every transaction connected with an illegal transaction is itself illegal. Each case must turn on its own facts. The purpose of the statute which has been violated must be considered. In that connection, the court should consider whether a holding that the collateral transaction is illegal will tend to assist or defeat the main purpose of the statute. . . . [¶] This principle is stated . . . as follows: 'If refusal to enforce or to rescind an illegal bargain would produce a harmful effect on parties for whose protection the law making the bargain illegal exists, enforcement or rescission, whichever is appropriate, is allowed.' " (*Robertson v. Hyde* (1943) 58 Cal.App.2d 667, 672 [137 P.2d 703].)

■ Cases have recognized "causes of action that do not seek 'the collection of compensation for the performance of any act or contract for which a license is required' are beyond the scope of Business and Professions Code section 7031." (*Holland v. Morse Diesel Internat., Inc.* (2001) 86 Cal.App.4th 1443, 1451 [104 Cal.Rptr.2d 239].) This case does not involve a collection action by Axcell for the cost of its work. Rather, defendant sought reimbursement from plaintiff for expenses it incurred to maintain and make repairs to the unit, including the amount it paid to Axcell. Thus, the sum claimed is in the nature of indemnification for one who paid by another who in justice should pay. (See *Ranchwood Communities Limited Partnership v. Jim Beat Construction Co.* (1996) 49 Cal.App.4th 1397, 1421 [57 Cal.Rptr.2d 386] ["total ban on . . . liability for equitable indemnity, arising from a too strict interpretation of the licensing law, would be a windfall and would not be within the protective purpose of the licensing statute"].)

Finally, plaintiff claims defendant is barred from recovering the repair and maintenance expenses because it "was creating a new thing, i.e., rehabilitating a rental unit for sale." This argument essentially amounts to an attack on the sufficiency of the evidence to support the trial court's decision. " 'It is well established that a reviewing court starts with the presumption that the record contains evidence to sustain every finding of fact.' [Citations.]" (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362].) Consequently, " '[w]hen a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact.' [Citations.]" (*Ibid.*) The same rule applies "whether the

trial court's ruling is based on oral testimony or declarations. [Citation.]" (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 479 [243 Cal.Rptr. 902, 749 P.2d 339], fn. omitted.)

■ As a general rule "the mortgagee may make such repairs as are reasonably necessary for the preservation of the property, but not permanent improvements, or things which conduced merely to his comfort or convenience. [Citations.]" (*Raynor v. Drew* (1887) 72 Cal. 307, 312 [13 P. 866].) " 'The ordinary rule in respect to improvements is that the mortgagee will not be allowed for them further than is proper to keep the premises in necessary repair. Unreasonable improvements may be of benefit to the estate; but, unless made with the consent and approbation of the mortgagor, no allowance can be made for them. The mortgagee has no right to impose them upon the owner, and thereby increase the burden of redeeming.' [Citation.]" (*Malone v. Roy* (1895) 107 Cal. 518, 523 [40 P. 1040].)

Defendant's opposition to the petition included the declaration of Toby Strassenberg, one of its project managers. It stated he "personally evaluated the extent of damage" to the unit, concluding it was "in need of repair and rehabilitation." In part, the repair work resulted from the discovery of substantial termite damage. He also claimed, the "repairs made were necessary to prevent further damage to the property . . . ."

Referring to her claim repairs "necessary to 'maintain' the property as a rental unit" are distinguishable from repairs rehabilitating the unit for the purpose of a resale, plaintiff claims "no conflict appeared in the evidence before the trial court." While it may be true defendant made the repairs with the intent of reselling the unit, as discussed above, the distinction between one living in the unit as an owner and one living in it as a tenant, insofar as the right of redemption is concerned, amounts to a distinction without a difference.

Thus, plaintiff has failed to establish the trial court erred by awarding defendant the entire amount expended in the effort to repair and maintain the unit after acquiring it at the foreclosure sale.

## 5. *Denial of Plaintiff's Request for an Offset*

Finally, noting the repair work begun by defendant "was not complete at the date of the hearing" on her petition and claiming "the amount to complete the work" would exceed the $770 in interest awarded to defendant as part of the redemption price, plaintiff argues awarding this amount to defendant would be inequitable.

 Code of Civil Procedure section 729.060, subdivision (b)(4) and (1) expressly provides "[i]nterest on" "[t]he purchase price at the sale" constitutes an element of the redemption price. The statute allows an offset to one seeking to redeem the property only for "[r]ents and profits from the property paid to the purchaser or the value of the use and occupation of the property to the purchaser . . . ." (Code Civ. Proc., § 729.060, subd. (c).) As discussed above, defendant presented evidence supporting a finding substantial repairs were needed to make the unit habitable. Consequently, the unit was not available for occupation while it was being rehabilitated. In addition, defendant's failure to complete the repair work resulted from plaintiff's repossession of the unit while the work was in progress. Therefore, we reject plaintiff's offset claim as well.

## DISPOSITION

The order is affirmed. Respondent shall recover its costs on appeal.

O'Leary, J., and Moore, J., concurred.

A petition for a rehearing was denied May 20, 2011, and appellant's petition for review by the Supreme Court was denied July 13, 2011, S193749.